**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 9:25-cv-80761-MIDDLEBROOKS/Matthewman**

DAVID MANCHESTER,

 *Plaintiff,*

v.

ENDURANCE ASSURANCE
CORPORATION,

 *Defendant.*

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW**

Dated: July 21, 2025

By: _____
Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Graciana M. Zevallos (FBN 1019160)
gzevallos@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Avenue, Ste. 1200
Miami, Florida 33136-4118
Telephone: 305-530-0050

*Attorneys for Defendant Endurance
Assurance Corporation*

Defendant, Endurance Assurance Corporation ("Endurance"), pursuant to S.D. Fla. L.R. 7.1, files this response in opposition to Plaintiff David Manchester's ("Manchester") Verified Expedited Motion for Preliminary Injunction [ECF No. 7].

## SUMMARY

This is an insurance coverage action wherein Manchester seeks coverage under a directors' and officers' policy issued by Endurance to cover executives of MV Realty Holdings, LLC ("MV Realty"). The parties' dispute turns on whether Endurance has fulfilled its obligations under the policy by providing $1 million in coverage to its insureds or whether the coverage limits are instead $4 million. In a separate case, Amanda Zachman, MV Realty's founder and another insured under the Endurance Policy, filed suit against Markel American Insurance Company and Houston Specialty Insurance Company, asserting that coverage exists under policies issued by these insurers to which Endurance's Policy is contingent and/or excess.

To resolve this dispute, the parties must first engage in discovery to determine several critical issues of fact regarding the timing and validity of claims asserted against Manchester and other insureds and their prior knowledge (or lack thereof) of those claims, and whether subsequent claims relate back to the original claim such that they are all treated as occurring on the same date. Endurance has already begun the process of obtaining this information—much of which Manchester himself failed to provide to Endurance presuit despite numerous requests—so that the Court can rule on the ultimate merits of whether Endurance breached the subject policy.

Notwithstanding that this is the type of insurance coverage dispute is inherently fact bound, Manchester has undertaken the extraordinary approach of requesting a preliminary injunction. What is more egregious is that Manchester does not even seek to maintain the status quo; he instead requests that the Court order Endurance to reimburse or advance additional defense costs while the parties litigate whether Manchester is entitled to those same costs.

At bottom, Manchester is trying to use Rule 65 to have the court prematurely resolve the merits of this case. The Court should deny this extraordinary request because Manchester has not shown he is substantially likely to prevail on the merits and will suffer irreparable harm absent an injunction.

## INTRODUCTION

Starting with Florida in 2022, MV Realty, Manchester, and/or other MV Realty executives have been sued by Attorneys General or other civil enforcement divisions of 14 states, which all have alleged that they were architects of a scheme perpetrated by MV Realty that locked consumers into unconscionable contracts requiring them to use MV Realty as their real estate broker for a 40 year term. MV Realty then recorded a lien against the property and demanded a fee to cancel the lien if the consumer wanted to sell the property. In addition to the more than one dozen states that have filed suit, MV Realty received a Senate Inquiry from the chairmen of the Committees on Aging, Finance, and Banking, Housing, and Urban Affairs, as well as a civil investigative demand from the State of Virginia.

In some cases, Manchester has already been adjudicated to having deceived MV Realty's customers. Last year, Judge Darren Farfante of the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida, entered summary judgment on liability against Manchester, ruling he personally violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). In Minnesota, a judgment was entered that prohibits Manchester from working as brokers for five years.

This dispute between Manchester and Endurance turns primarily on the applicable insurance coverage limits. Endurance contends coverage is limited to $1 million, which amount it has already exhausted in funding the defense of Manchester and his partners. Manchester contends the coverage limits available are $4 million.

It is clear that resolution of this dispute will turn, in significant part, on distinct issues of fact concerning the dates on which Manchester and other insureds first became aware of claims made against them in the various actions and regulatory proceedings, whether subsequent claims relate back to the original Florida claim, whether they complied with his contractual duty to cooperate with Endurance, and whether they violated a warranty statement pertaining to prior knowledge of facts, circumstances or situations that might give rise to future claims.

Not surprisingly, these crucial factual issues remaining unresolved at the outset of this case. But Manchester now moves for a mandatory preliminary injunction, brazenly asserts there are no facts in dispute, and requests that the Court order Endurance to

2

advance/reimburse defense costs up to the remaining $3 million in coverage limits. Manchester's Motion effectively requests that the Court grant final summary judgment on the merits; he seeks by an injunction an award of the very damages that may be recoverable if he proves a breach of contract.

As Endurance demonstrates below, Manchester has not met his heavy burden to prove entitlement to mandatory injunctive relief. Disputed issues of fact abound, which preclude a finding that Manchester is likely to succeed on the merits. Endurance is entitled to discovery regarding all of the various investigations, claims, complaints, and other actions against MV Realty and its executives, the responses to all such matters, and other pertinent information that will establish when claims first arose under the Endurance Policy and whether Manchester and other insureds knew about those claims.

Without that evidence, the Court cannot determine that Manchester is likely to prevail in the coverage dispute. And Manchester filed no evidence to prove he will be irreparably harmed absent an injunction, especially considering that financial harm alone is generally insufficient. The Court should deny Manchester's Motion.

RELEVANT FACTS

**A.      Endurance's Insurance Contract**

Endurance issued to MV Realty an insurance contract bearing number ADL30001923102 with effective coverage dates of August 28, 2022 to August 28, 2023 (the "Endurance Policy"). A copy of the Endurance Policy is as **Exhibit 1**.[1]

The Endurance Policy provides secondary coverage to the coverage afforded under the Primary Policy, defined as "the insurance policy designated as such in the Declarations." *Endurance Policy*, at 9. The declarations state that the Primary Policy is

---

[1] Endurance requests that the Court consider the relevant documents attached hereto in ruling on Manchester's motion. As this Court has noted, when evaluating a motion for preliminary injunction "a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding." *U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 2013 WL 718503, at *9 (S.D. Fla. Feb. 26, 2013) (Middlebrooks, J.) (citation omitted), *aff'd*, 749 F.3d 967 (11th Cir. 2014). The copy of the Endurance Policy attached hereto differs from the copy attached to Manchester's complaint, which is missing the endorsements.

140557605.1

"Markel American Insurance Company MKLM2MML000716." *Id.* at 2. A copy of the Markel Policy is attached as **Exhibit 2.**

In No. 9:2025-CV-80826, also assigned to this Court, Zachman filed suit against Markel American Insurance Company ("Markel") and Houston Specialty Insurance Company ("Houston"). [2025-CV-80826, ECF No. 1]. The Markel Policy has the same coverage dates as the Endurance Policy. [2025-CV-80826, ECF No. 1-1 at 9]. The Endurance Policy provides potential coverage only when Manchester is not indemnified by MV Realty and is not paid by Markel in the first instance. *Endurance Policy*, p. 5.

The Endurance Policy provides that the "Insuring Agreements shall apply if and to the extent such **Loss** set forth below is not indemnified by the **Company** and not paid by any **Underlying Policy** for any reason, including, but not limited to, the exhaustion of the limit of liability of any such **Underlying Policy** or a **DIC Event.**" *Id.* at 1. "DIC Event" is defined as circumstances where:

> 1. an insurer of an **Underlying Policy** has failed to pay the **Loss** of an **Insured Person** by the greater of either the time required by such **Underlying Policy** for payment of such **Loss** or sixty (60) days; or
>
> 2. an insurer of an **Underlying Policy** has refused to pay the **Loss** of an **Insured Person**;
>
> after such **Insured Person's** written request for such payment.

*Id.* at 6.

The Endurance Policy provides aggregate limits of liability of $4 million. *Id.* at 2. Endorsement #1 sets forth a Pending or Prior Claim Exclusion:

> It is agreed that:
>
> The Insurer shall not be liable for **Loss** on account of any **Claim** based upon, arising from, or attributable to any litigation, administrative or regulatory proceeding, alternative dispute resolution proceeding, or investigation that was pending, or any order, decree, or judgment entered, on or before:
>
> A.    August 14, 2021, with respect to the first $1,000,000 of the Aggregate Limit of Liability; and
>
> B.    August 28, 2022, with respect to the limit of liability of $3,000,000 excess of the first $1,000,000 of the Aggregate Limit of Liability;

> or any fact, circumstance, situation, or event underlying or
> alleged therein.

*Id*. at 25. Under this plain language, Endurance has no obligation to provide the additional $3 million in coverage for a Claim arising on or before August 28, 2022.

Manchester acknowledges that Endurance already provided $1 million in coverage for defense costs. [ECF No. 7 at 1–2]. One of the core issues in this case is whether the first Claim against Manchester arose before August 28, 2022, in which case Endurance met its obligation by tendering $1 million in response to demands from Zachman and Manchester. Endurance contends that this exclusion applies because, as discussed below, the Florida opened the first investigation into Manchester and MV Realty in 2021, and subsequent claims relate back to the original Florida claim:

> All **Claims**, **Inquiries**, **Liberty Events**, and **Reputation Crises** that arise out of or in connection with the same fact, circumstance, situation, event, transaction, or **Wrongful Act** or facts, circumstances, situations, events, transactions, or **Wrongful Acts** that are **Interrelated** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against an **Insured Person**, the first of any such **Inquiries** for which an **Insured Person** seeks coverage is received by an **Insured Person**, or when the first of any such **Liberty Events** or **Reputation Crises** first takes place, whether such date is before or during the **Policy Period.**

*Endurance Policy*, p. 12.

### B.     The Claim Free Warranty

On August 26, 2022, MV Realty's chief executive officer, Anthony Mitchell signed a Claim Free Warranty Statement, which was delivered to Markel and attached as the last page of the Markel Policy. Mitchell warranted that "**no person** or entity **proposed for coverage** is aware of any fact, circumstance or situation which **he or she** has reason to suppose might give rise to a future claim that would fall within the scope of any of the proposed coverage part limit of liability stated above." *Claim Free Warranty*, p. 1 (emphasis added). As discussed below, the State of Florida's formal investigation was ongoing for over six months when Mitchell signed the Claim Free Warranty Statement. A copy of the Claim Free Warranty is as **Exhibit 3.**

C.    **The Florida Action**

Manchester was sued in his capacity as an officer of MV Realty in several legal actions throughout the United States. [ECF No. 1, ¶ 18]. One of the early actions was brought by the Florida Attorney General against Manchester, MV Realty PBC, LLC (MV Realty's subsidiary), Zachman, and Mitchell in Case Number 22-CA-9958, pending in the Thirteenth Judicial Circuit for Hillsborough County Florida (the "Florida Action"). A copy of the Complaint is attached as **Exhibit 4.**

In the Florida Action, Florida Attorney General Ashley Moody ("Florida General Moody") filed the affidavit of investigator supervisor Patrica V. Rossie ("Florida Investigator Rossie") in support of a request for a preliminary injunction, which is attached as **Exhibit 5.** Florida Investigator Rossie attested that in December 2021, Florida General Moody's office opened a formal investigation of MV Realty, Manchester, Zachman and other executives. *Rossie Aff.*, ¶ 4. Since 2020, Florida General Moody received at least 159 consumer complaints, often centered on MV Realty's Homeowner Benefit Agreement ("HBA") and the Memorandum of the HBA ("Memorandum) as part of MV Realty's Homeowner Benefit Program ("HBP"). *Id.* ¶¶ 9–12.

The HBA was a contract binding the consumer to a ***40-year term*** requiring the consumer to exclusively use MV Realty as their real estate agent in exchange for a nominal payment. But if the consumer breached the HBA, they were subjected to an early termination fee of 3% of the property's value. *Id.* ¶ 13. MV Realty would then record the Memorandum with the clerk of court, which operated as a lien against the homeowner's property. With this lien in place, the homeowner could not access equity in their home unless they paid MV Realty a substantial fee. MV Realty also used the Memorandum to collect fees or a commission from property sales. *Id.* ¶ 14.

After analyzing the complaints against MV Realty, Florida Investigator Rossie identified a pattern of deceptive and unfair business practices. Those practices included targeting vulnerable consumers, obtaining signatures from mentally incapacitated consumers, failing to provide copies of the documents, not disclosing the HBA's 40-year term, not disclosing that the Memorandum would be recorded as a lien, misrepresenting or failing to disclose the impact of the Memorandum, and misrepresenting or failing to

6

disclose that the consumer had to pay the early termination fee for the sale, transfer, or refinance of their home. *Id.* ¶ 16.

Beginning in January 2019, Florida Investigator Rossie began subpoenaing MV Realty's financial records from JP Morgan Chase, which revealed four business accounts during that period. Manchester was an authorized signatory on all four accounts. *Id.* ¶¶ 20–23. In March 2022, Florida General Moody also subpoenaed MV Realty's business records from January 2020 through May 2022. Those records showed that MV Realty advertised there would be "no repayment requirement" with the MV Realty program and that consumers could "get cash without selling your home" and without an "obligation to return the payment." *Id.* ¶ 24.

On November 29, 2022—fewer than three months after Mitchell signed the Claim Free Warranty Statement—Florida General Moody filed the Florida Action against Manchester and others. In Count III, Florida General Moody alleged Manchester violated FDUTPA. Manchester moved to dismiss the Florida Action, admitting that Florida General Moody's investigation began well before the suit was ultimately filed. *MTD*, p. 10 n.2. Manchester stated that MV Realty "responded fully and completely to two (2) formal subpoenas and multiple informal document and information requests" during that investigation. *Id.* at 11. A copy of the Motion to Dismiss is attached as **Exhibit 6.**

On September 24, 2024, Judge Farfante entered partial summary judgment in the Florida Action in favor of Florida General Moody, finding the defendants liable on all three counts. A copy of the Summary Judgment Order is attached as **Exhibit 7.**

Judge Farfante found that MV Realty operated in 32 states through various subsidiaries. *Id.* at 4, ¶ 7. Between 2018 and November 2022, MV Realty executed 9,303 HBAs with Florida consumers and 34,000 HBAs nationally. MV Realty received over $18 million in early termination fees between 2018 and 2023. *Id.* Judge Farfante further found that the defendants—including Manchester—hid, downplayed, or omitted the burdensome terms rendering "the HBA a virtually inescapable obligation to ultimately pay MV Realty at least 3% of the property's value knowing homeowners would be 'held over a barrel' at closing." *Id.* at 3–4, ¶ 9. Judge Farfante ruled the HBAs and Memorandum were both procedurally and substantively unconscionable and, therefore, unenforceable against the consumers. *Id.* at 6, ¶ 14.

Judge Farfante rejected Manchester's contention that he did not personally participate in any violations, emphasizing that Manchester: "(1) built-out of the transfer specialist program and crafted its organizational structure; (2) prepared training materials for the transfer specialists; (3) hired and trained real estate agents to engage with consumers; and (4) purchased sales leads utilized to make millions of prerecorded calls to consumers within and outside Florida." *Id.* at 8–9, ¶ 19. The Florida Action remains pending, with a trial on damages set for the December 8, 2025 trial period.

### D.      Other Actions Across the County

Attorneys General of many other states also investigated and ultimately sued MV Realty and its subsidiaries, with Manchester being named personally as a defendant in many actions. Some of these actions include:

- *State of Minnesota v. MV Realty, et al.*, Case No. 62-CV-24-5877, in the Second Judicial District Court of Ramsey County, Minnesota;

- *State of North Carolina. v. MV Realty PBC, LLC, et al.*, Case No. 23CV006408-91, in the Superior Court of Wake County, North Carolina;

- *Attorney General of the State of New Jersey v. MV Realty PBC, LLC, et al.*, in the Superior Court of Essex County, New Jersey;

- *Office of the Attorney General, State of Indiana v. MV Indiana Realty, LLC, et al.*, Case No. 23-cv-01578, in the United States District Court, Southern District of Indiana;

- *State of Missouri v. MV Realty of Missouri, LLC, et al.,* in the Circuit Court of St. Louis County, Missouri, Case No. 24SL-CC01124; and

- *State of Georgia, ex rel. Christopher M. Carr, Atty. General State of Georgia v. MV Realty PBC, LLC, et al.,* in the Superior Court of Fulton County, Georgia.

In the Minnesota Action, a judgment was entered that required MV Realty to rescind contracts with Minnesota residents and prohibited MV Realty from recovering any money from consumers whose contracts were rescinded. MV Realty was also required to refund consumers from whom MV Realty collected an early termination fee. Although Manchester was not sued in the Minnesota Action, the judgment prohibits him personally from "engag[ing] in any business involving residential real estate brokerage in Minnesota for a period of five (5) years" and "providing training, directly or indirectly, to individuals

engaged in any business involving the purchase or sale of residential real estate in Minnesota." *Judgment*, p. 3, ¶ 4. A copy of the Judgment is attached as **Exhibit 8.**

Additionally, the evidence shows that several news articles documented consumer complaints against MV Realty and potential investigations both before and shortly after August 28, 2022. For example, CBS News Boston reported on March 4, 2022, that the Massachusetts Attorney General's office was reviewing complaints about MV Realty, and that an attorney for affected homeowners was considering filing suit. Copies of a selection of News Articles are attached as **Exhibit 9.**

### E.    Manchester's Demand and Endurance's Response

As of May 7, 2025, Endurance had advanced or reimbursed a total of $881,264.82 to Zachman under the Endurance Policy, whose counsel also represents Manchester. On that date, Manchester demanded the remaining $118,735.18 in coverage. Endurance responded by asking Manchester to provide evidence that MV Realty turned down Manchester's request for advancement of defense costs, evidence of any denials from other insurers, and complaint/claim documents because Endurance was not able to confirm whether it received notice of the claims against Manchester.

Endurance followed up several times, requesting that Manchester provide the above-referenced documents. Endurance ultimately agreed to tender the remaining available coverage under a reservation of rights and continued asking for full invoices and other records. Manchester then filed his Complaint. Copies of Presuit Emails are attached as **Exhibit 10.**

### F.    Zachman's Suit against Markel and Houston

In No. 9:25-cv-80826-DMM, Zachman—who is represented by Manchester's counsel in this case—filed suit against Markel and Houston. Zachman alleges that coverage exists under the Markel Policy for many of the exact same "Various State Actions" identified by Manchester. *Compare* [2025-CV-80826, ECF No. 1 at 5, ¶ 23], *with* [ECF No. 1 at 5, ¶ 18].[2] Zachman claims that Markel improperly denied coverage for her claims. [2025-CV-80826, ECF No. 1 at 3–41, ¶¶ 13–41]. In 2025-CV-80826, Zachman filed

---

[2] Zachman and Manchester's counsel did not file a Notice of Related Case, as required by S.D. L.R. 3.8. Endurance's undersigned counsel became aware of the other case today and has promptly filed the required notice. [ECF No. 15].

a functionally identical motion for a preliminary injunction, requesting that this Court order Markel and Houston to advance or reimburse defense costs for many of the same actions in which Manchester has been named as a defendant as well. [2025-CV-80826, ECF No. 4]. The Court has not set a briefing schedule on that motion.

MEMORANDUM OF LAW

The law is apodictic that a preliminary injunction "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (citation omitted). The moving party must show: "(1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest." *Werner v. Gordon & Partners, P.A.*, 2023 WL 9472291, at *2 (S.D. Fla. Sept. 12, 2023) (Middlebrooks, J.) (citation omitted). The failure to meet any of the four prerequisites "dooms" the request for an injunction. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Upon a failure to prove one element, the district court need not consider the remaining elements. *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011); *see also Finkelstein v. Mount Sinai Med. Ctr. of Fla.*, 2023 WL 6118179, at *7 n.8 (S.D. Fla. Sept. 19, 2023) (Altman, J.).

Preliminary injunctions are either prohibitive or mandatory. The typical injunction falls into the prohibitive category and requests that the court prevent a party from taking certain action in order to maintain the status quo pending resolution of the case on the merits. *FHR TB, LLC v. TB Isle Resort, LP.*, 865 F. Supp. 2d 1172, 1192 (S.D. Fla. 2011) (Graham, J.). By contrast, a mandatory injunction "seeks to force one party to act" rather than to maintain the status quo. *K.G. ex rel. Garrido v. Dudek*, 839 F. Supp. 2d 1254, 1260 (S.D. Fla. 2011) (Lenard, J.).

Mandatory injunctive relief "is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581, 583 (11th Cir. 2017) (quoting *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976)); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all Fifth Circuit decisions prior to October 1, 1981).

10

The movant must demonstrate that "a clear legal right has been violated, irreparable harm has been threatened, and there is a lack of an adequate remedy at law." *Fernandez v. Bal Harbour Vill.*, 49 F. Supp. 3d 1144, 1151 (S.D. Fla. 2014) (Lenard, J.).

Manchester seeks a mandatory injunction that certainly would not maintain the status quo; it would require Endurance to immediately pay policy benefits in an unclear amount (but potentially up to the remaining $3 million limits) without any safeguard ensuring Manchester could reimburse Endurance if he does not prevail on the merits. *See, e.g.*, *Hanover Ins. Co. v. Vemma Int'l Holdings Inc.*, 2016 WL 4059606, at *5 (D. Ariz. July 29, 2016) (construing insureds' motion for a preliminary injunction requiring D&O insurer to pay defense costs as a mandatory injunction).

## A.    Manchester Has Not Demonstrated a Substantial Likelihood of Success on the Merits

Manchester contends that the "relevant facts are largely undisputed" and that Endurance "has not raised any legitimate policy exclusion" that could bar coverage. [ECF No. 7 at 3]. Not so. As set forth in Endurance's Answer and Affirmative Defenses, [ECF No. 16], Endurance raised meritorious coverage defenses turning on factual issues. Even if Endurance may ultimately have the burden to prove some defenses on summary judgment, it is certain that, under Rule 65, Manchester has the burden at this stage to prove that he is substantially likely to succeed in the coverage dispute.

To meet his burden, Manchester must ***refute*** Endurance's defenses, which he has not done. In fact, even the limited available evidence shows that Endurance is likely to prevail on the merits because the evidence will show that the Florida Action and other actions commenced before the August 28, 2022 cutoff for claims qualifying for additional coverage. The Court should reject Manchester's assertion that no facts are in dispute.

### 1.    An Exception to the Eight Corners Rule Applies.

Manchester contends the Court can resolve the parties' coverage dispute by reviewing nothing more than the allegations of his Complaint and the Endurance Policy because the claims against him fall within the scope of coverage. But this is not a case about whether Endurance has a duty to *defend* Manchester based on the allegations against him. Manchester's request for a declaration that Endurance owes him a duty to defend is perplexing because the Endurance Policy provides coverage only for defense

11

costs, and "the Insured Persons and not the Insurer shall have the duty to select defense counsel and defend all Claims covered under this Policy." *Endurance Policy*, p. 12.

Rather, the pertinent issue is whether Endurance exhausted the available coverage for defense costs. Endurance indisputably paid for $1 million in defense costs under the Endurance Policy for claims against Manchester and Zachman. Endurance contends that the remaining $3 million in potential coverage is not available here because the claims against Manchester and other insureds arose from an investigation, litigation, regulatory proceeding, or similar action on or before August 28, 2022.

Many third-party insurance cases can be resolved with the so-called "eight corners rule," whereby the issue of whether *vel non* and insurer is required to duty to defend (or advance defense costs to) a policyholder can be decided by simply looking at whether the allegations set-forth in the four corners of underlying complaint's allegations "potentially bring the suit within policy coverage," (e.g., the four corners of the insurance policy). *Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n, Inc.*, 721 F. App'x 847, 854 (11th Cir. 2017) (quoting *Jones v. Fla. Ins. Guar Ass'n, Inc.*, 908 So. 2d 435, 442–42 (Fla. 2005)).

Nonetheless, as both the Eleventh Circuit and Florida Supreme Court have noted in binding cases, the eight corners rule has two important exceptions. A court can "consider extrinsic facts if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014). The second exception applies "where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the complaint." *Higgins v. State Farm Fire and Cas. Co.*, 894 So. 2d 5, 10 n.2 (Fla. 2004).

As many courts recognize, one would not expect an insured to admit to having knowledge of matters that would make claims fall outside the scope of coverage. Policy provisions like a "Related Claims provision", a "Prior Notice exclusion", and "Prior Knowledge" provision, for example, "necessarily call for the consideration of facts that would not be expected to appear in the underlying complaint." *RLI Ins. Co. v. OutsideIn Architecture, LLC*, 692 F. Supp. 3d 1077, 1098 (M.D. Fla. 2023); *see also Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, 172 F. Supp. 3d 1326, 1340 (M.D. Fla. 2016) (applicability of prior knowledge exclusion required review of facts outside eight corners

because "one would not necessarily expect the [complaint] to disclose facts relevant to whether [Plaintiff] had knowledge of its alleged wrongful conduct prior to its execution of the insurance application").

These exceptions apply here. Resolution of the parties' dispute requires the Court to resolve the factual issue of when the Florida Action (or perhaps even earlier actions) first gave rise to a claim under the Endurance Policy, and whether the subsequent actions are interrelated such that they relate back to the original claim. The answer to that unresolved dispute will determine whether Endurance could potentially be liable for up to an additional $3 million in coverage.

## 2. Critical Issues of Fact Cannot be Resolved Without Discovery.

To resolve the parties' dispute, the Court necessarily must review evidence not currently available. That evidence will allow the Court to determine whether the claims against Manchester for which he seeks coverage for defense costs arose before August 28, 2022, in which case Endurance met its contractual obligation by providing $1 million in coverage. The same evidence is also relevant to the issue of whether Manchester, Zachman, Mitchell, or another insured violated the Claim Free Warranty Statement, committed a misrepresentation on the insurance application, or otherwise engaged in conduct that precludes coverage under Florida statutory and common law.

But the available evidence filed in support of this Response shows, at a minimum, that Florida and other states were investigating MV Realty and its executives well before August 28, 2022. Manchester admitted in his Motion to Dismiss the Florida Action that the presuit investigation began 16 months before the suit in November 2022, "during which MV Realty responded fully and completely to two (2) formal subpoenas and multiple informal document and information requests." *See Motion to Dismiss*, p. 3. Under the Endurance Policy, a "formal investigative order" or "written notice," including a "subpoena," qualifies as a Claim. *Endurance Policy*, p. 4. Even a cursory internet search reveals news articles before or near August 2022 discussing investigations into MV Realty and potential civil demands, giving rise to potentially even earlier claims.

Endurance has submitted FOIA requests to several states requesting documents related to any investigations, lawsuits or administrative proceedings, including but not

13

limited to consumer complaints, business records, sworn testimony, and investigative subpoenas into MV Realty, Manchester, Zachman, and others. Copies of these requests are attached as **Exhibits 11–22.** Endurance also served a request for production asking Manchester to provide similar information in his possession, as well as full invoices for all defense costs he incurred in defending the various actions against him. A copy of the RFP is attached as **Exhibit 23**. Without this critical evidence to consider, the Court cannot determine that Manchester has refuted Endurance's numerous coverage defenses and, therefore, it is substantially likely to prevail on the merits of the dispute.

Regarding the Claim Free Warranty, Manchester incorrectly asserts that "it is undisputed that there was no express threat of any litigation or claim" at the time that statement was signed, but the evidence shows otherwise. [ECF No. 7 at 4]. That is certainly disputed. Hence, this lawsuit. Manchester is not likely to succeed in showing that he did not know about any investigations or claims before August 28, 2022.

It bears emphasis that the knowledge of Manchester's fellow insureds also binds him with respect to the Claim Free Warranty. The Endurance Policy allows one insured's knowledge to be imputed to another insured except with respect to one exclusion for deliberate criminal/fraudulent acts: "For purposes of determining the applicability of ***this Exclusion***, the conduct of one **Insured Person** shall not be imputed to any other **Insured Person**." *Endurance Policy*, p. 15 (first emphasis added). The fact that this language appears only with respect to one exclusion demonstrates that, in all other instances, one Insured Person's knowledge is imputed to other Insured Persons. *See, e.g.*, *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 143 F. Supp. 3d 1283, 1296 (S.D. Fla. 2015) ("[T]hat certain exclusions are expressly subject to a severability clause is not indicia that the other exclusions are also several—it is additional indicia that they are not") (Williams, J.), *aff'd sub nom. Stettin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 861 F.3d 1335 (11th Cir. 2017). This raises additional issues of fact because Endurance is entitled to discovery from all insureds, not only Manchester, to determine whether any persons "proposed for coverage" violated the Claim Free Warranty.

There are other pending factual issues concerning Manchester's compliance with his post-loss obligations under the Endurance Policy. Manchester was required to provide Endurance "with all information, assistance, and cooperation that the Insurer reasonably

14

requests with respect to any **Claim**[.]" *Endurance Policy*, p. 13. Endurance will show that it sent numerous requests for information and documents concerning the claims against Manchester, notices to Endurance, correspondence from MV Realty and other insurers regarding coverage, and full invoices for legal defense costs incurred. That information is critical to the issue of when Manchester first knew of an investigation or claim against him. Endurance has no duty to provide coverage when it has been prejudiced by a breach of an insured's post-loss obligations. *See, e.g.*, *200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 616 F. App'x 936 (11th Cir. 2015) (violation of post-loss duties barred coverage).

Lastly, there are issues created by Zachman's companion suit against Markel and Houston. Zachman and Manchester are represented by the same counsel, but only one of them sued Markel and only one of them sued Endurance. Both Zachman and Manchester have asked the Court to grant the extraordinary relief of a preliminary injunction, which would require *both* the primary and excess insurer to fund the same defense at the same time. It seems apparent that it simply cannot be that Zachman gets coverage from Markel, but Manchester gets coverage from Endurance. The fact that these cases are proceeding simultaneously raises additional questions precluding injunctive relief.

These critical and currently unresolved factual issues prevent a finding that Manchester is substantially likely to prevail on the merits. But to the extent the Court is inclined to resolve factual disputes, the evidence shows that Endurance, not Manchester, is substantially likely to prevail because uncontroverted evidence from the Florida Action proves that the Attorney General's office opened a formal investigation of MV Realty in December 2021. Even if other claims did not arise until after the August 28, 2022 cutoff, they relate back to the original Florida investigation because all of the claims arise from the same underlying scheme.

These are interrelated claims that "shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against an **Insured Person**." *Endurance Policy*, p. 12; *see, e.g.*, *Zodiac Group, Inc. v. Axis Surplus Ins. Co.*, 542 F. App'x 844, 849 (11th Cir. 2013) ("Because all claims in [the] state and federal complaints arose from the 'same Wrongful Act,' the Policy treats those claims as having been made on the same date."). At worst, this is another issue of fact requiring denial of Manchester's motion.

15

Manchester has not met his heavy burden to show that he is substantially likely to succeed on the merits. The evidence shows otherwise. At a minimum, unresolved factual disputes render injunctive relief inappropriate, especially considering that the injunctive relief requested effectively requires the Court to make a preliminary decision on the merits of the parties' breach of contract dispute. *See TRT LeaseCo, LLC v. DGI-BNSF Corp.*, 2020 WL 13847504, at *2 (S.D.N.Y. Sept. 15, 2020) ("[A] preliminary injunction 'should not be used as a device for ... deciding questions of contract breach, properly determinable after trial'" (alteration in original) (quoting *Diversified Mortg. Inv'rs v. U.S. Life Ins. Co. of N.Y.*, 544 F.2d 571, 576 (2d Cir. 1976)).

**B.     Manchester Has Not Demonstrated Irreparable Harm**

Manchester argues that he will be irreparably harmed unless the Court requires Endurance to advance or reimburse his defense costs before the Court adjudicates his claim for those same damages on the merits. Manchester has not met his burden to prove irreparable harm because mere litigation costs are insufficient, and he presented no competent evidence to support a finding that he will be deprived of counsel without Endurance's insurance benefits. Nor does Manchester address the fact that Zachman is suing Markel to provide coverage under the primary policy, which coverage may be available to Manchester as well.

The law is clear that "mere litigation expense, even substantial and unrecoupable costs, does not constitute irreparable injury." *Miss. Chem. Corp. v. E.E.O.C.*, 786 F.2d 1013, 1018 (11th Cir. 1986) (quoting *Fed Trade Comm'n v. Std. Oil Co. of Cal.*, 449 U.S. 232, 244 (1980)); *see also Allstate Ins. Co. v. Preston*, 842 F. Supp. 1441, 1445 (S.D. Fla. 1992) (denying injunction where "the only irreparable injury plaintiff has alleged is the litigation costs it will incur in defending the state court action").

Manchester cites no cases applying Florida law in which a court granted a preliminary injunction requiring an insurer to advance or reimburse a policyholder for defense costs under a D&O Policy in a dispute over entitlement to those same costs. Endurance's research likewise revealed none. This is novel, extraordinary relief.

Manchester relies on *Freedom Specialty Ins. Co. v. Platinum Management (NY), LLC*, 2017 WL 6610417, at *1 (N.Y. Cnty. Sup. Ct. Dec. 27, 2017), a distinguishable "eight corners" case where the court found that resolving the coverage issue would require

nothing more than a comparison of various complaints against the insured to determine whether those complaints arose from the same conduct or different conduct. *Id.* at *3. By contrast, the coverage disputes here necessitate review of extrinsic evidence outside the eight corners to determine when the first action constituting a claim occurred under the Endurance Policy arose, which will determine whether an additional $3 million in coverage may be available or whether Endurance has exhausted its coverage obligations.

Manchester also puts significant weight on a thirty-five year old case from a single district court in another state applying another's state's law: *Emons Industries, Inc. v. Liberty Mutual Insurance Co.*, 749 F. Supp. 1289 (S.D.N.Y. 1990).[3] This case is likewise distinguishable because it did not involve a dispute over the terms of coverage; the insurer threatened to cease coverage for the collateral reason that it wanted the insured to select different defense counsel, and the court granted a prohibitive injunction—not a mandatory injunction like Manchester seeks here—to prevent the insurer from doing so. *Id.* at 1295. The court also found that the insured showed irreparable harm by providing evidence of its financial condition. *Id.* at 1293.

These nonbinding decisions are inapposite. Unlike the insurers *Freedom Specialty* and *Emons Industries*, Endurance presented evidence demonstrating the applicability of several defenses, and resolution of those issues requires findings of fact that cannot be made simply by reviewing the complaint and the insurance policy. The *Emons Industries* decision is particularly inapplicable because the coverage dispute did not turn on application of coverage defenses; the insurer simply wanted the insured to be represented by different counsel but failed to show that current counsel was inadequate. And the insurer did not *exhaust* available coverage like Endurance did in this case. As set forth above, Endurance is substantially likely to demonstrate that all claims against Manchester relate back to the Florida Action.

---

[3] It appears that Manchester mistakenly cites to an earlier decision in the same case: *Emons Indus., Inc. v. Liberty Mut. Ins. Co.*, 747 F. Supp. 1079 (S.D.N.Y. 1990). Manchester cites *Dupree v. Scottsdale Ins. Co.*, 96 A.D.3d 546, 947 N.Y.S.2d 428 (2012), which, he states, found that "once a defense is compromised or counsel is lost, 'the bell cannot be un-rung' by a later award of damages." [ECF No. 7 at 7]. That quote does not appear in the opinion.

Numerous other courts have denied similar injunctive relief. These courts recognize that "a preliminary injunction may not issue merely because there is an assertion that the defendant breached a contract, particularly where the harm alleged is purely financial and could be remedied later through an award of money damages." *Daileader v. Certain Underwriters at Lloyd's London - Syndicate 1861*, 670 F. Supp. 3d 12, 38 (S.D.N.Y. 2023).[4] If Endurance wrongfully determined that its coverage obligations are limited to the $1 million already provided, then Manchester "is entitled to seek damages at law as [he] is doing in this action." *Bondex Intern., Inc. v. Hartford Acc. & Indem Co.*, 2006 WL 2057349, at *1 (N.D. Ohio July 21, 2006).

To the extent an injunction is appropriate under these circumstances, Manchester "must provide more than a bare assertion that the requested legal fees are necessary to an adequate defense." *Cox v. Fletcher Allen Health Care*, 2005 WL 2457632, at *2 (D. Vt. Oct. 5, 2005); *see also McPeek v. Travelers Cas. & Sur. Co. of Am.*, 2006 WL 1308087, at *5 (W.D. Pa. May 10, 2006) ("[S]ome actual *evidence* of irreparable harm, *e.g.,* an affidavit, testimony or documents, is required to support a finding of irreparable harm in such a situation as this."); *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (reversing preliminary injunction where "no witnesses or other evidence was submitted on the issue of irreparable injury"); *Jordan v. Def. Fin. & Acct. Servs.*, 2015 WL 6166578, at *2 (M.D. Fla. Oct. 20, 2015) ("Because the Plaintiff has not presented any evidence that he is at risk of irreparable harm, his motion for preliminary injunction must be denied.").

The insureds in *Freedom Specialty* and *Emons Industries* provided evidence of their inability to afford counsel absent coverage from the defendant insurer. Manchester provided no evidence whatsoever in support of his Motion, much less competent evidence sufficient to meet his burden to demonstrate irreparable harm. Consequently, Manchester has not proven that he will be irreparably harmed absent injunctive relief.

---

[4] *Aff'd sub nom. Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 2023 WL 7648381 (2d Cir. Nov. 15, 2023), and *aff'd sub nom. Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351 (2d Cir. 2024)

### C.     The Balance of Harms Does Not Favor Injunctive Relief

Manchester has not shown that the balance of harm weighs in favor of injunctive relief. As set forth, *supra*, Manchester filed no evidence in support of his extraordinary request. Conversely, Endurance will be substantially harmed if the Court grants the requested relief because Endurance will be highly unlikely to claw back any benefits it is ordered to provide at this stage in the event it later prevails on the merits.

### D.     The Public Interest Does Not Favor Injunctive Relief

Manchester dedicates a significant portion of his Motion to this element. The crux of Manchester's argument is that insurers should not be able to "renege on defense obligations." [ECF No. 10]. Endurance has not done so. It provided the maximum available $1 million in coverage. Compelling Endurance to fund Manchester's defense at this preliminary stage when it exhausted coverage does not serve the public interest.

### E.     Injunctive Relief is Not Appropriate to Award Manchester the Same Damages Sought in the Complaint

Even if Manchester could establish every element necessary for a preliminary injunction, that relief is not appropriate because requiring Endurance to advance defense costs is precisely the relief Manchester seeks in his complaint.

In *Dover Steel Co., Inc. v. Hartford Accident & Indemnity Co.*, 806 F. Supp. 63 (E.D. Pa. 1992), the plaintiffs sought a preliminary injunction requiring their insurers to tender $125,000 to reimburse the plaintiffs for defense costs. *Id*. at 64. The court denied the motion because plaintiffs were effectively "asking the Court to require defendants to pay plaintiffs the damages plaintiffs seek in the underlying contract dispute while that dispute is in the process of being litigated." *Id*. at 67. To grant that relief, the court explained, "would be tantamount to making available to plaintiffs the financial fruits of victory when their right to obtain judgment remains at issue." *Id*. at 68; *see also Bondex Int'l, Inc.*, 2006 WL 2057349, at *1 (similar). The Court should not permit Manchester to use a preliminary injunction to recover breach of contract damages.

### F.     Manchester's Offer of $10,000 in Security is Insufficient

If the Court is inclined to grant Manchester extraordinary preliminary injunctive relief notwithstanding the issues highlighted herein, it should require Manchester to post significant security. Manchester requests funds up to $3 million, but he offers to post only $10,000. The Court should reject that offer. By Manchester's own admission, no

safeguard exists to ensure that he will reimburse Endurance if the Court rules for Endurance on the merits. *See Rochester Drug Co-Operative, Inc. v. Hiscox Ins. Co., Inc.*, 2020 WL 906872, at *3 (W.D.N.Y. Feb. 25, 2020) (granting injunction conditioned on $500,00 bond reflecting estimated amount of cost to try cases to verdict, because "if a determination is ultimately made finding it is not entitled to coverage, Plaintiff would almost certainly not be able to repay Defendant for the defense costs advanced").

To the extent the Court requires Endurance to advance or reimburse up to $3 million in defense costs, it should require Manchester to post the same amount in security. Manchester is adamant that he will prevail on the merits and prove that Endurance breached its obligation to fund his defense. Endurance has no means to claw back any defense costs it advances to Manchester if Endurance prevails on the merits. The only weigh to balance the harms is to require a dollar-for-dollar bond.

## CONCLUSION

For the reasons stated herein, Endurance respectfully requests that the Court enter an order denying Manchester's motion for a preliminary injunction.

Dated: July 21, 2025

By: _Aaron S. Weiss_
Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Graciana M. Zevallos (FBN 1019160)
gzevallos@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Avenue, Ste. 1200
Miami, Florida 33136-4118
Telephone: 305-530-0050

*Attorneys for Defendant Endurance*
*Assurance Corporation*