## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-80761-MIDDLEBROOKS/Matthewman

DAVID MANCHESTER, an individual,

     Plaintiff,

v.

ENDURANCE ASSURANCE CORPORATION,

     Defendant.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** comes before the Court upon Plaintiff's David Manchester's Verified Expedited Motion for Preliminary Injunction ("Motion"), filed July 3, 2025.  (DE 7).  I previously determined I would not set a hearing for this matter unless I deemed one was necessary after reviewing the briefing. (DE 14). Having reviewed the Motion, Defendant's Response (DE 17), and Plaintiff's Reply (DE 20), I determine I can rule on Plaintiff's Motion without a hearing.

### Background

Plaintiff is an officer of a Florida limited liability company called MV Realty PBS, LLC ("MV PBS"), a subsidiary of MV Realty Holdings LLC ("MV Realty"). (DE 7 at 1). MV Realty held a directors' and officers' policy issued by Defendant Endurance Assurance Corporation (hereinafter "Endurance" and "Endurance Policy") that had a policy period of August 28, 2022 to August 28, 2023. (DE 7; DE 17-1 at 2). The Endurance Policy requires Endurance to pay for a "Loss on behalf of an insured person on account of a Claim first made during the Policy Period….for a Wrongful Act that takes place before the end of the Policy Period." (DE 1 ¶ 13). Plaintiff, along with other officers of MV Realty, are currently being sued and investigated by the Attorneys General in various jurisdictions across the country, including Florida, Minnesota,

Indiana, California and others for their actions as officers of MV Realty and its subsidiaries. (*Id.* ¶ 18; DE 17 at 9). It is undisputed that MV Realty's officers' legal defense costs are included within the policy's definition of Loss and that Plaintiff is an officer of MV Realty under the policy. It is also undisputed that Defendant has already paid Plaintiff $1 million dollars under the policy to fund Plaintiff's legal defense costs.

The underlying suit involves the Parties' dispute as to whether Plaintiff's coverage under the Endurance Policy is limited to the $1 million dollars already paid, or whether Plaintiff is entitled to the full $4 million dollars permitted; the net difference of three million dollars have yet to be paid. (DE 1). Endurance contends that the remaining $3 million is not available to Plaintiff under the policy and has refused payment. On June 17, 2025, Plaintiff sued for declaratory relief that Endurance is obligated to pay his legal costs associated with defending the various lawsuits against him (Count I) and that Endurance has breached the Parties' contract by refusing to do. (Count II). (DE 1). Thus, this lawsuit necessarily involves a determination of the scope and duties of the policy at issue, which will also involve other factual inquiries to determine whether the terms of the policy have been met.

### Discussion

I will deny Plaintiff's motion. At the outset, I question whether a preliminary injunction is an appropriate remedy in light of the facts and posture of this dispute. "A preliminary injunction is meant to keep the status quo for a merits decision, not replace it." *Vital Phrams., Inc. v. Alfieri*, 23 F.4th 1282, 1288 (11th Cir. 2022). *See generally* 11A Charles Alan Wright, Arthur Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948 (3d ed. 2013 & 2019 supp.) (preservation of the status quo through a preliminary injunction "is unobjectionable when used simply to articulate the desire to prevent [the] defendant from changing the existing situation to [the]

plaintiff's irreparable detriment"). Plaintiff's current Motion for Preliminary Injunction essentially seeks an early adjudication of the merits of this case. Plaintiff demands Defendant pay him the policy limits now, arguing that he will be irreparably harmed by the economic burden of having to self-fund his own legal defense in the various lawsuits, citing his defense counsel's impending withdrawal from his representation due to overdue legal bills. (DE 20 at 2). *See Miami Beach Federal Sav. and Loan Ass'n v. Callander*, 256 F.2d 410, 416 (5th Cir. 1958) ("We have repeatedly held that an order for a temporary injunction does not and cannot decide the merits of the case.").

Plaintiff contends his relief sought is not extraordinary in that he seeks to "maintain the status quo by [Defendant] continuing to fund his legal defense[s]" in the litigation against him around the country. (DE 20 at 3). But I think this misses the mark, as the current status quo is Defendant having ceased payment under the policy. Thus, in reality, Plaintiff's Motion does not seek to maintain the status quo, but instead seeks to force Defendant to pay out the benefits of the disputed policy before the scope and duties of the policy have been determined, which as I discuss below, includes various factual disputes that will have to be fleshed out in the course of litigation. "Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law <u>clearly favor</u> the moving party." *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976) (emphasis added).

Regardless, even assuming the injunctive relief sought in this context is appropriate and cognizable, I find that the motion lacks substantive merit. To obtain a preliminary injunction, Plaintiff bears the burden of demonstrating: "(1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that

the preliminary injunction would not be adverse to the public interest." *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014) (citation omitted). A preliminary injunction is an "extraordinary and drastic remedy not to be granted unless the movant clearly carries the burden of persuasion as to the four prerequisites. *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (internal quotations omitted).  Importantly, failure to meet even one of the elements of the test dooms the request for a preliminary injunction.  *Wreal LLC, v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2018).

Here, I need only discuss the first prong-- substantial likelihood of success on the merits-- to determine Plaintiff's Motion fails.

At the heart of this case are two issues, and I find that Plaintiff has not demonstrated a likelihood of success on either. The first dispositive question is determining when Florida's Attorney General (or other attorneys generals) began their investigations of MV Realty.  This issue is a key factual determination because the insurance policy in dispute contains a provision where Defendant will not provide the excess $ 3 million coverage for any claims that arose before August 28, 2022. The dispute in this litigation will be 1) whether Florida's Attorney General's (or any other states') investigations began prior to August 28, 2022 and B) even if they did, whether the policy's language precludes coverage for prior investigations.

It is undisputed that Florida's AG's Office filed suit against Plaintiff and MV Realty on November 29, 2022, during the policy's covered period. (DE 17 at 8; DE 17-4; DE 20 at 5). It is disputed, however, when the Florida AG began its <u>investigation</u> of Plaintiff, which potentially implicates the following policy language:

> The Insurer shall not be liable for Loss on account of any Claim based upon, arising from, or attributable to any litigation, administrative or regulatory proceeding, alternative dispute resolution proceeding, <u>or investigation that was pending</u>, or any

4

order, decree, or judgment entered, <u>on or before…August 28, 2022</u>, with respect to the limit of liability of $3,000,000 excess of the first $1,000,000[.]"

(DE 17-1 at 25) (emphasis added).

The policy also includes the following language that dates back a claim to the original date the claim was first made against Plaintiff:

> All Claims, Inquiries, Liberty Events, and Reputation Crises that arise out of or in connection with the same fact, circumstances, situation, event, transaction, or Wrongful Act or facts, circumstances, situations, events, transactions, or Wrongful Acts that are Interrelated shall be deemed one Claim, <u>and such Claim shall be deemed to be first made on the date the earliest of such Claims is first made against an Insured Person, the first of any such Inquires for which an Insured Person seeks coverage is received by an Insured Person</u>, or when the first of any such Liberty Events or Reputation Crises first take place, whether such date is before or during the Policy Period.

(DE 17-1 at 12) (emphasis added).

"Inquiry" is further defined in the Endurance Policy as a "verifiable request or demand that an Insured Person….produce documents, including electronic records, or information; pertaining to the business of the Company or the Insured Person's capacity as such, if such request or demand is [made]: 1. By an Enforcement Body[.]" (DE 17-1 at 11). Any state's attorney general is included within the definition of "Enforcement Body." (*Id.* at 10).

Thus, Defendant has contended in its affirmative defenses (DE 16) that it is not liable under the policy for the remaining $3 million policy limits because "several States' regulatory investigations into MV Realty's HBP Program commenced prior to…August 28, 2022." (DE 16 at 9). In its response to the present Motion, Defendant argues that Florida opened its formal investigation into Plaintiff starting in as early as December 2021. (DE 17 at 7; DE 17-5 at 2). This eventually led to the Florida AG's office subpoenaing MV Realty for its business records in March

2022 and subpoenaing MV Realty's bank for the company's financial records, which included Plaintiff as an authorized signor. (DE 17-5 at 7-8).  Plaintiff contends that under the policy language "this position presumes that the Inquiries are Claims" and because none of the Inquiries identify Plaintiff at all, Defendant's arguments fail. (DE 20 at 6-7). At the very least, there are reasonable differing interpretations of the provisions above that cannot be said to be significantly leaning in either Party's direction at this point in the litigation, let alone show Plaintiff has a substantial likelihood of success in this case.  Even more so, discovery may uncover that other states' attorneys general had already begun investigating Plaintiff before August 28, 2022, as I note below.

The second dispositive question is whether Antony Mitchell, the CEO of MV Realty committed a misrepresentation on the insurance application that could potentially void the insurance policy under Florida law. Plaintiff cannot show that it is more than likely going to prevail on this issue either.

Defendant argues that Antony Mitchell, the CEO of MV Realty signed a "Claim Free Warranty Statement" on August 26, 2022 in which he guaranteed that "[n]o person or entity proposed for coverage [under the Endurance policy] is aware of any fact, circumstance, or situation which he or she has reason to suppose might give rise to a future claim that would fall within the scope of any of the proposed coverage part limit of liability stated above[.]" (DE 17-3). Defendant argues Mr. Mitchell breached this exclusionary clause in his company's insurance application because he was well aware (or could have reasonably foreseen) the Florida's AG's office ongoing investigation into his company's practices at the time of signing the insurance contract. (DE 17 at 14); *see Berkley Assurance Co. v. Expert Group Int'l, Inc.*, 779 F. App'x 604 (11th Cir. 2019)

(discussing an insurance policy's prior-knowledge exclusionary clause in the context of a Florida insurance contract).

The Parties vehemently dispute whether Mitchell was aware of the AG's pending investigation against his company when he signed the Claim Free Warranty Statement. Plaintiff argues "Defendant has offered no evidence Mitchell was aware of any specific fact, circumstance of situation by any insured that caused him on to believe on August 26, 2022 that there would be a claim [against his company]." (DE 20 at 10). But Defendant *has* offered evidence: the affidavit of Patricia Rossie, an investigator supervisor with the Florida Attorney General's office, filed as a part of the AG's ongoing case against Plaintiff. (DE 17-5). In her affidavit, she swears the AG's office issued a subpoena to MV Realty in March 2022 regarding MV Realty's marketing materials being investigated which eventually gave rise to Florida's lawsuit against Plaintiff. (DE 17-5). Defendant also points to several news agencies from around the country that were already publishing news reports about MV Realty's questionable activity before the time Mr. Mitchell signed the warranty statement in August 2022. (DE 17-9 at 4). Included within these publications is a March 2022 article by CBS Boston which states, "[t]he I[nvestigative] Team has learned the [Massachusetts] Attorney General's office is reviewing complaints about MV Realty." (DE 17-9 at 3).

As Plaintiff acknowledges, Defendant will bear the burden in this litigation of showing Mr. Mitchell (or any other officer of MV Realty) were aware of any fact, circumstance, or situation that would make a future claim against them foreseeable. (DE 20 at 11). At this stage, however, Defendant has done enough to show that Plaintiff does not have a substantial likelihood of success on the merits, in light of some evidence tending to show that it was at least possible that MV Realty's officers were aware of the misrepresentation made.

**Conclusion**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction (DE 7) is **DENIED.**

 **SIGNED** in Chambers in West Palm Beach, Florida, this 13th day of August 2025.

Donald M. Middlebrooks<br>
United States District Judge

Copies to:  Counsel of Record