UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 9:25-cv-80761-MIDDLEBROOKS/Matthewman

DAVID MANCHESTER,

    *Plaintiff*,

v.

ENDURANCE ASSURANCE
CORPORATION,

    *Defendant*.

_____/

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION TO DETERMINE THE CASE IN TWO PHASES

Defendant Endurance Assurance Corporation ("Endurance"),[1] submits this Response in Opposition to Plaintiff David Manchester's Amended Motion to Determine the Case in Two Phases [ECF No. 29].

As Endurance makes clear in this response, what Manchester really wants is to expedite the ruling on the coverage issues (the main issues in this case) and, having been unsuccessful with his attempt to use Fed. R. Civ. P. 65 to shortcut this dispute, he is now trying to use Fed. R. Civ. P. 42 for the same purpose. The problem, though, is that the coverage issues are really what this case is about. As detailed in Endurance's Response to Manchester's Motion for Preliminary Injunction, the questions relevant to the coverage issues will require a reasonable amount of discovery. [ECF No. 17 at 14].

On the other hand, questions regarding reasonableness of the attorney fees for which reimbursement is sought (the proposed issue to be bifurcated) are unlikely to heavily contested and will likely largely be a ministerial undertaking.

At bottom, Manchester appears to be using this second motion as a stalking horse to persuade the Court to seek bifurcation and put the resolution of the coverage issues on faster track than they are already are. The Court should reject this gambit and instead keep the current schedule in place.

---

[1] Unless otherwise indicated, capitalized terms used in the response shall have the same meaning as those set forth in Endurance's Response to Manchester's Motion for Preliminary Injunction. [ECF No. 17 at 14].

1

**INTRODUCTION**

From the outset of this case, Manchester has taken the position that no discovery is needed to resolve the coverage question. He said as much in his July 3, 2025 Motion for Preliminary Injunction, asserting that the "relevant facts are largely undisputed" and that Endurance "has not raised any legitimate policy exclusion that would even potentially preclude coverage of these claims at this stage." [ECF No. 7 at 3]. According to Manchester, "[i]t is undisputed that there was no express threat of any litigation or claim under the Policy or the Claim Free Warranty Statement." *Id.* at 4.

In its July 22, 2025 Response to the Motion for Preliminary Injunction, Endurance contended that there were critical issues of fact that could not be resolved without discovery. [ECF No. 17 at 14]. Endurance explained that it had already submitted public records requests to several states for documents relating to any investigations, lawsuits, or administrative proceedings, as well as a request for production on Manchester for all relevant documents in his possession. *Id.* at 14–15.

In the Court's August 13, 2025 Order denying the Motion for Preliminary Injunction, the Court noted that "discovery may uncover that other state's attorneys general had already begun investigating Plaintiff before August 28, 2022 …." [ECF No. 22 at 6]. Indeed, Manchester now appears to concede that coverage dispute turns on the "dates on which Plaintiff and other insureds first became aware of claims made against them, whether subsequent claims related back to the original claim in Florida, and whether MV violated a warranty statement pertaining to prior knowledge of facts, circumstances or situations that might give rise to future claims." [ECF No. 29 at 2–3].

On July 24, 2025, the Court issued an order setting March 9, 2026, as the trial date. [ECF No. 19]. Thereafter, by order dated July 30, 2025, Judge Matthewman set a Scheduling Conference to occur on August 21, 2025. [ECF No. 21]. Judge Matthewman's order specifically instructed the parties that "[a]ny motions to modify the existing trial date should be filed two (2) business days prior to the Scheduling Conference." *Id.* This means any request to change the trial date was due to be filed by August 19, 2025. No such request was filed.

Following the conference, Judge Matthewman issued a scheduling order setting out an orderly discovery schedule leading to a December 26, 2025 deadline for the

completion of all discovery, with summary judgment motions due to filed two weeks after that. [ECF No. 24]. This schedule will thus provide approximately five weeks between the completion of summary judgment briefing (per briefing deadlines under S.D Fla. L.R. 7.1) and the Court's final pretrial conference on March 6, 2025.

Manchester now requests to bifurcate the case into two phases: liability and damages. Manchester (once again) suggests he needs an expedited coverage ruling because his counsel has begun to withdraw from his defense in the underlying actions.

As the Court is aware, Manchester previously moved for a preliminary injunction, requesting that the Court require Endurance to provide Manchester with the very insurance benefits he seeks by this litigation. [ECF No. 7]. The Court denied that extraordinary relief, ruling Manchester was not substantially likely to prevail on the merits. [ECF No. 22]. Manchester's motion for bifurcation is another request to treat this fairly routine insurance coverage dispute case uniquely and detract from the ordinary way in which insurance coverage cases are litigated in this District.

Further, regardless of the merits *vel non* of bifurcation, Manchester's proposed deadlines are unworkable. Manchester proposes that the parties complete *all* discovery by October 17, 2025, and then file dispositive motions by October 31, 2025. Manchester also proposes that the parties disclose expert reports by September 12, 2025, which is fewer than ten days after Manchester filed this Amended Motion and before any depositions have been scheduled, much less completed.

Indeed, on September 4, 2025, the parties filed their Joint Discovery Plan wherein they *agreed* that Fed. R. Civ. P. 26 Initial Disclosures would be served on September 17, 2025. [ECF No. 31]. In other words, Manchester's proposal is that expert reports for both sides be exchanged five days *before* the exchange of Fed. R. Civ. P. 26 Initial Disclosures.

| EVENT | CURRENT DEADLINE | MANCHESTER'S PROPOSAL |
|---|---|---|
| Initial Disclosures | September 17, 2025 | September 17, 2025 |
| Plaintiff's Expert Disclosures | October 2, 2025 | September 12, 2025 |
| Defendant's Expert Disclosures | October 30, 2025 | September 12, 2025 |
| All Discovery to be Completed | December 26, 2025 | October 17, 2025 |
| Summary Judgment Motions | January 8, 2026 | October 31, 2025 |
| Trial | March 9, 2025 | *** |

3

141372022.1

Endurance has not been sitting on its hands. Rather, it served its First Request for Production on Manchester on July 22, 2025 (which was the day that the Parties engaged in their Fed. R. Civ. P. 26 Joint Planning and Scheduling Conference). After requesting two extensions, Manchester provided his responses on September 5, 2025.[2]

And even were Manchester's proposed deadlines realistic (they are not), bifurcation will not meaningfully conserve time or judicial resources because any disputes related to the reasonableness of the fees will likely be minimal. Even if Manchester proves that he is entitled to additional coverage, Endurance has proposed to Manchester that it would the review and adjust the relevant attorney fee invoices in the ordinary course of business, which will render the need for a trial on damages unlikely.

For these reasons, the Court should deny Manchester's Motion.

### MEMORANDUM OF LAW

Federal Rule of Civil Procedure 42(b) authorizes the Court to order separate trials on one or more separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). The rule "confers broad discretion" to bifurcate issues as appropriate. *Krug v. Celebrity Cruises, Inc.*, 2017 WL 5640729, at *1 (S.D. Fla. Apr. 13, 2017) (Scola, J.). But that discretion is not unlimited. *Harrington v. Cleburne Cnty. Bd. of Educ.*, 251 F.3d 935, 939 (11th Cir. 2001) (holding trial court abused its discretion in granting bifurcation). As the party requesting bifurcation, Manchester bears the burden to prove that "bifurcation would serve judicial economy, avoid inconvenience, and not prejudice any of the parties." *Krug*, 2017 WL 5640729, at *1 (citing *Brown v. Toscano*, 630 F. Supp. 2d 1342, 1345 (S.D. Fla. 2008) (Seltzer, J.)).

### A.  Bifurcation Serves No Legitimate Purpose Here

Manchester argues bifurcation is appropriate because if the Court rules for Endurance on the coverage question, then it will not need to determine damages. [ECF No. 29 at 4]. This is true of nearly every civil case, which "almost always involves the

---

[2] Manchester's response also included "general objections [which] are meaningless and without merit," under the Court's Local Rules. *Atl. Healthcare, LLC v. Argonaut Ins. Co.*, 2021 WL 2333112, at *1 (S.D. Fla. June 7, 2021) (Maynard, J.) ("Where an objection is made to any integratory or subpart thereof or to any production request ... the objection shall state with specificity all grounds" (citing S.D. Fla. L. R. 26.1(e)(2)(A))).

4

141372022.1

dual issues of liability and damages." *Campbell v. Pirelli Tire, LLC*, 2013 WL 12092519, at *2 (S.D. Fla. Feb. 12, 2013) (Rosenbaum, J.) Indeed, "[f]ollowing [Manchester's] argument to its logical conclusion, every civil trial should therefore be conducted in two phases .... Clearly, this is an untenable proposition." *Id.* (alteration in original).

Manchester also fails to articulate how bifurcation would meaningfully conserve significant time, expense, or resources. This is not, for instance, akin to a personal injury case where bifurcation of liability from damages often obviates the need for substantial discovery and multiple days of trial dedicated solely to medical evidence regarding a plaintiff's damages. To the contrary, even if the Court finds that Manchester can tap into the remaining $3 million in potential coverage, it is quite unlikely that there will be a need for a traditional "trial" on damages.

To that end, Endurance has made clear to Manchester's counsel that if coverage is found in Manchester' favor, then Endurance will, as the contract provides, review the bills Manchester submits and work out an expedited process to resolve any disputes. Moreover, because Endurance has already reimbursed $1 million in Defense Costs, this work would not be done on a blank slate. By now, the rates for the various attorneys (primarily at the Saul Ewing law firm) have already been established. Further, there already was a reasonable amount of back and forth on the bills in connection with $1 million. The parties have already shown that they can work together to work through the fee claims submitted to Endurance. In fact, Manchester does not contend that Endurance breached the insurance contract in its adjustment of this portion of the claim.

In other words, if the Court ultimately rules in Manchester's favor on the coverage question, Endurance will continue to adjust the bills in the same manner it did with respect to the first $1 million. This is not the type of case where a factfinder must determine the amount of recoverable damages—the parties agree that the maximum potential available coverage is up to an additional $3 million. So regardless of the Court's ultimate determination of the merits of coverage, bifurcation will not expedite the case, preserve judicial economy, or convenience the parties and witnesses.

As noted above, more than anything else, the proposed bifurcation appears to be a stalking horse for Manchester to drastically expedite the deadlines on the key issue in

the case: the coverage question. And Manchester's proposed schedule will substantially prejudice Endurance's ability to reasonably defend against his claims.

Moreover, Manchester's proposal that Judge Matthewman conduct an "evidentiary hearing" to determine the issue of coverage is yet another attempt to inject a bespoke procedural framework. [ECF No. 29 at 5–6]. Manchester appears to suggest that if the coverage question is not resolved on summary judgment, the parties would proceed to an evidentiary hearing to resolve any factual disputes. Endurance has never agreed to this proposal. If the Court determines that issues of fact preclude summary judgment for either party on coverage, then a traditional trial (be it bench or jury) is required. Indeed, "the Federal Rules of Civil Procedure were adopted in 1938," and Manchester has offered no compelling reason to depart from the well-settled procedural rules that have long been followed. *Marek v. Chesny*, 473 U.S. 1, 7–8 (1985).

### B.     The Applicable Legal Framework

Even if the Court finds that bifurcation would serve a legitimate purpose, Manchester's proposed deadlines are unworkable considering the volume of discovery the parties must undertake to resolve the merits of their dispute. As the Court explained, the two issues "at the heart of this case" are the Pending or Prior Claim Exclusion and Claim Free Warranty. [ECF No. 22 at 4].

Courts in this Circuit "routinely affirm the denial of coverage where an insurance policy contains an unambiguous prior knowledge provision and where an insured has knowledge, prior to the effective date of the policy, of acts or omissions that might reasonably provide the basis for a claim." *St. Paul Mercury Ins. Co. v. Spencer Int'l Advisors, Inc.*, 2012 WL 13109896, at *7 (M.D. Fla. Mar. 28, 2012). Judges in the District have found similar policy provisions unambiguous. *David R. Farbstein, P.A. v. Wesport Ins. Corp.*, 2017 WL 3425327, at *7 (S.D. Fla. Aug. 9, 2017) (Bloom, J.) ("the language of the prior-knowledge exclusion is not ambiguous."); *Ill. Union Ins. Co. v. Cliff Berry Inc.*, 2006 WL 3667230, at *7 (S.D. Fla. Nov. 17, 2006) (Huck, J.) (same).

These provisions are often found in claims-made policies "because they ensure that only risks of unknown loss are potentially incurred, and prevent an insured from obtain[ing] coverage for the risk of a known loss, which would be unfair to the insurer." *Berkley Assurance Co. v. Expert Grp. Int'l Inc.*, 779 F. App'x 604, 611 (11th Cir. 2019)

(alteration in original) (citation omitted). The policy language "may possibly result"—analogous to the Claim Free Warranty's "might give rise" language—creates a "low bar: it does not call for a probability, but for any possibility that [insured] would be named in a suit or other demand." *RLI Ins. Co. v. OutsideIn Architecture, LLC*, 692 F. Supp. 3d 1077, 1108 (M.D. Fla. 2023).

A prior knowledge exclusion applies in two instances. First, "if the insured 'knew' that a wrongful act might be expected to be the basis of a claim." *Feldman v. Imperium Ins. Co.*, 2015 WL 5854153, at *6 (M.D. Fla. Oct. 5, 2015). As Judge Blooms noted, this calls for a subjective standard because the question is whether the insured has "actual knowledge" of a wrongful act. *David R. Farbstein, P.A.*, 2017 WL 3425327, at *7.

Second, the exclusion applies where "the insured 'could have reasonable foreseen' that a wrongful act might be expected to be the basis of a claim.'" *Id.* (citing *Feldman*, 2015 WL 5854153, at *6. This test has both an objective and subjective component: "whether the insured 'could have reasonably foreseen that a wrongful act might be expected to be the basis of a claim' (objective) and by requiring that this be based on facts known to the insured (subjective)." *Id.*

### C. Endurance Is Entitled to Appropriate Discovery

With this legal framework in mind, to resolve the coverage question, Endurance requires discovery on several fronts. And as discussed above, that discovery includes objective evidence—such as the dates investigations began—as well as subjective evidence—such as Manchester and his fellow insureds' belief that claims may be filed against them. Recall that Manchester does not seek coverage for one claim or suit: Manchester was investigated and sued in numerous separate jurisdictions, and discovery is required on each of those presumably interrelated claims.

Endurance already submitted public records requests to numerous State Attorneys General offices. [ECF No. 17-11 through 17-22]. Endurance also served its First Requests for Production on Manchester, [ECF No. 17-23], and a subpoena on MV Realty, attached as **Exhibit 1**. But those sources are just a start. As noted in the Joint Discovery Plan, Endurance seeks documents from other persons and entities, including:

- Copies of all consumer complaints, formal lawsuits, or administrative proceedings filed against MV Realty, its subsidiaries, and/or its executive

7

directors and officers, including but not limited to Plaintiff and Zachman, related to the company's implementation of the "Homeowner Benefit Program";

- Copies of all complaints or lawsuits in which MV Realty filed liens against anyone and/or their property related to the "Homeowner Benefit Program";

- Copies of any investigative demands or requests for information directed to MV Realty, its subsidiaries, and/or its executive directors and officers, including Plaintiff and Zachman, from any regulatory body related to the "Homeowner Benefit Program";

- Documents provided in response to any investigative demands or requests for information directed to MV Realty, its subsidiaries, and/or its executive directors and officers, including Plaintiff and Zachman, from any regulatory body related to the "Homeowner Benefit Program";

- Documents containing or referring to communications between MV Realty, its subsidiaries, and/or its executive directors and officers, including Plaintiff and Zachman (or anyone acting on their behalf) and any third-party related to the "Homeowner Benefit Program";

- Documents containing or referring to communications between MV Realty, its subsidiaries, and/or its executive directors and officers, including Plaintiff and Zachman (or anyone acting on their behalf) and any third-party regarding any lawsuit or administrative proceeding related to the company's implementation of the "Homeowner Benefit Program";

- Copies of all retainer agreements entered into between MV Realty, its subsidiaries, and/or its executive directors and officers, including Plaintiff and Zachman, and any attorney concerning any investigative demands from a regulatory body, consumer complaints, administrative proceedings, and/or lawsuits related to the "Homeowner Benefit Program";

- Copies of all billing invoices related to legal services performed on MV Realty, its subsidiaries, and/or its executive directors and officers, including Plaintiff and Zachman's behalf related to any investigative demands from a regulatory body, consumer complaints, administrative proceedings, and/or lawsuits concerning the "Homeowner Benefit Program"; and

- Any additional documents relevant to the Complaint or any defenses asserted by Endurance.

Furthermore, the discovery Endurance requires is not limited to Manchester. In the Claim Free Warranty, MV Realty's CEO Mitchell warranted that "no person …

8

proposed for coverage" was "aware of any fact, circumstance or situation" that "might give rise to a future claim." [ECF No. 17-3]. As noted in the Joint Discovery Plan, Manchester agrees that one of the core issues concerns the "dates on which [Manchester] and other insureds first became aware of claims made against them." [ECF No. 29 at 2].

Thus, Endurance is entitled to depose not only Manchester, but every individual who qualifies as an Insured Person under the Policy. *See Axis Ins. Co. v. Farah & Farah, P.A.*, 503 F. App'x 947, 950 (11th Cir. 2013) (finding term "any person proposed for coverage" applied to previously affiliated lawyer whose alleged negligence gave rise to later legal malpractice action). This includes, at a minimum, Manchester, CEO Mitchell, Amanda Zachman,[3] and any other MV Realty officers, employees, agents, or affiliates with relevant knowledge.

Endurance also is entitled to (and likely will) seek deposition testimony from the brokers involved in procuring the insurance coverage, including Socius Insurance Services, Inc., and Hub International Florida. Endurance may also seek to depose counsel who assisted MV Realty and its executives with responding to the various subpoenas, etc. from the various states that preceded the various underlying state actions.

### D. Manchester's Proposed Deadlines are Impracticable

Against this background, even if the Court grants bifurcation, it should hold the parties to the current discovery and dispositive motion deadlines. The parties currently have until December 26, 2025, to complete all discovery, and dispositive motions must be filed by January 8, 2026. [ECF No. 24 at 5]. Manchester seeks to significantly shorten these timeframes and require that the parties *complete* discovery on the coverage issues

---

[3] Amanda Zachman, MV Realty's founder, is also represented by Manchester's counsel in this case and has been sued in many of the same underlying actions as Manchester. Endurance provided Zachman with the first $881,264.82 in coverage for defense costs before Manchester requested, and Endurance tendered, the remaining $118.735.18 of the undisputed $1 million of coverage. As set forth in the Joint Discovery Plan, Manchester's counsel have indicated that in they intend to amend the complaint to add Zachman as an additional plaintiff before the September 15, 2025 deadline for amendments to pleadings [ECF No. 31 at 1, n.1] and have provided Endurance with a draft of the proposed amended pleading. Endurance has provided its written consent, pursuant to Fed. R. Civ. P. 15(a)(2) for the amendment.

9

(the main issues in the case) by October 17, 2025, and then file dispositive motions only two weeks later on October 31, 2025. This is not feasible given the volume of discovery necessary to allow the Court to make a reasonably informed decision on the merits.

Even a single discovery issue requiring intervention from the Court would likely result in the deadline elapsing before discovery concludes. In fact, discovery delays have already occurred through no fault of Endurance. On July 21, 2025, Endurance served Manchester with its First Requests for Production. Endurance agreed to two extensions of time for Manchester's responses. Endurance does not fault Manchester for requesting additional time. But the fact that Endurance's first discovery request prompted Manchester to seek multiple extension requests is emblematic of why his proposed deadlines are unworkable. Endurance simply cannot obtain the discovery it requires in just over a month's time, especially if every request results in multiple extensions.

Manchester's proposed deadline for expert disclosures is equally infeasible. Manchester requests that the Court order the parties disclose experts and all materials required by Fed. R. Civ. P. 26(a)(2) by September 12, 2025—a practical impossibility. And the parties' initial disclosures are not due until September 17, 2025, which is five days after Manchester proposes that experts have finished their reports.

At this time, Endurance is evaluating whether it will retain an expert to address the issues of Manchester or his fellow insureds' subjective knowledge of a potential claim. The issue, though, is that Manchester's proposed schedule does not even afford Endurance the ability to make that determination.

If Endurance decides to retain an expert, it certainly will not have time to produce a compliant expert report. Any expert must review discovery and deposition transcripts to render an opinion as to whether Mitchell or any other insureds knew or should have known of a potential claim when Mitchell signed the Claim Free Warranty.

Under Manchester's proposal, all experts would need to finalize their opinions before the first deposition is even scheduled to occur. Nor can Endurance's potential expert(s) respond to Manchester's potential expert(s) because Manchester proposes that all expert reports are produced on the same day. That conflicts with the Court's current requirement that Manchester disclose his experts 28 days before Endurance discloses its experts.

**CONCLUSION**

Endurance understands why Manchester is seeking a speedy resolution, but that cannot be accomplished at the expense of Endurance's right to a fair trial, which necessitates that Endurance has sufficient time for discovery. The current deadlines are manageable and will result in the parties filing their competing summary judgment motions in fewer than four months. And regardless of the Court's ruling, any proceedings on damages will be either minimal or nonexistent. For these reasons, Endurance respectfully requests that the Court deny Manchester's Amended Motion for Bifurcation.

Dated: September 10, 2025

By: /s/ Aaron S. Weiss
Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Graciana M. Zevallos (FBN 1019160)
gzevallos@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Avenue, Ste. 1200
Miami, Florida 33136-4118
Telephone: 305-530-0050

*Attorneys for Defendant Endurance Assurance Corporation*